IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

RAFAEL EUGENE WATSON,

                    Plaintiff,

        vs.

KELLOGGS CO.,

                    Defendant.

8:20CV126


MEMORANDUM
AND ORDER

This matter is before the court for an initial review of Plaintiff's pro se, in forma pauperis Complaint (Filing 1) to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I. SUMMARY OF COMPLAINT

Plaintiff states this action is based on "FMLA" and "EEOC/Discrimination." (Filing 1, p. 3.) For supporting facts, Plaintiff alleges:

> I was suspended the defendant company to do FMLA. I never received a termination notice. I contacted my union worker rep. He has also been unable to get a strait [sic] answer from the defendant in regards to my job status.

(Filing 1, p. 4.) Attached to the Complaint is a copy of a charge of discrimination Plaintiff filed jointly with the Nebraska Equal Opportunity Commission ("NEOC") and the federal Equal Employment Opportunity Commission ("EEOC") on June 28, 2018, in which he states:

> I. I am black. I have a disability and a record of disability. I was hired by Respondent on 11/26/2011, most recently in a Rice Cook position. I requested a reasonable accommodation, which was granted. Due to my disability, record of disability, and in retaliation for requesting accommodation, Respondent failed to accommodate me. Due to my

race, color, disability, record of disability, and in retaliation for requesting accommodation, I was suspended, lost my benefits and I was terminated.

II. I believe I have been discriminated against on the basis of disability, record of disability and retaliation, in violation of ADA Amendments Act of 2008, and Section 48-1104 and 48-1114(1) of the Nebraska Fair Employment Practice Act, and on basis of race and color in violation of Title VII of the Civil Rights Act of 1964, as Amended and Section 48-1104 of the Nebraska Fair Employment Practice Act, in that:

1. Due to an impairment in September 2017, I applied for FMLA in October 2017, which was approved by Respondent. I was told by an Insurance Representative (name unknown, race unknown, disability unknown) I could take up [to] two days off a week due to my impairment. Due to my disability I took a few days off in October 2017.

2. In November 2017, I noticed I was getting points for not being at work, although Respondent had approved my FMLA. I called Respondent, and I was told that my doctor was only approving one day per month. I contacted my doctor and he submitted another document approving all the days I had taken off due to my impairment. I always called the line I was supposed to call in case I could not make it to work.

3. In December 2017, the doctor recommended me to have a surgery as soon as possible. I stated I could not have surgery in December. In January 2018, my doctor and I agreed I would have surgery in March 2018.

4. On February 5, 2018, HR Caroline-Rowe (biracial, no known disability) contacted me and stated I was being terminated, because I exceed my 13 points. Respondent was adding points since January 2017. The policy states after 1000 hours of work, three points should be dropped, but Respondent was not following their policy by adding points from 10 months before. My Union Representative Rob Downs (white, no known disability) explained to Ms. Rowe my doctor submitted updated information about my condition, and about the days I was not at work due to my disability. Ms. Rowe stated I was suspended and she would conduct an investigation and get back to me.

5. On March 12 2018, I had my surgery. On 5/2/2018, I was cleared to go back to work. On May 10, 2018, Mr. Downs had a meeting with HR and I was informed I was terminated and Respondent did not want me to go back to work, although they had all the documentation my doctor provided. Respondent never gave me a formal termination letter. The only letter I received was a letter stating Respondent was cancelling my benefits on May 13, 2018. I know my coworker Tracy Lux (white, disabled) had over 25 points due to her disability, and Respondent conducted an investigation and she was able to go back to work. Also my coworker Christopher Kid (white, no known disability) had a drug problem, and he was able to go back to work.

6. My performance was excellent.

(Filing 1, pp. 6-7.) [1]

## II.  LEGAL STANDARDS ON INITIAL REVIEW

The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

---

[1] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed.R.Civ.P. 10(c). For that reason, when determining whether a complaint states a plausible claim for relief, a court may consider material attached to the complaint. *See Zayed v. Associated Bank, N.A.*, 779 F.3d 727, 732 (8th Cir. 2015).

3

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Id.*, at 849 (internal quotation marks and citations omitted).

## III. DISCUSSION OF CLAIMS

Liberally construing Plaintiff's Complaint, this is an action to redress alleged violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Plaintiff also asserts companion claims for disability and racial discrimination under the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. § 48-1101 *et seq.*

### A. Family and Medical Leave Act

The Eighth Circuit has recognized three categories of FMLA claims arising under 29 U.S.C. § 2615(a)(1)-(2):

> (i) entitlement claims, in which an employee alleges a denial of a benefit to which he was entitled under the statute; (ii) discrimination claims, in which an employee alleges that the employer discriminated against him in the terms and conditions of employment because the employee exercised rights to which he was entitled under the FMLA; and (iii) retaliation claims, in which an employee alleges that the employer took adverse action against him for opposing a practice made unlawful under the FMLA.

*Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517-18 (8th Cir. 2015).

"The first type [of FMLA claim], arising under § 2615(a)(1), occurs where an employer refuses to authorize leave under the FMLA or takes other action to avoid

4

responsibilities under the Act." *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012); *see Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1050 (8th Cir.2006); 29 C.F.R. § 825.220(b). "An employee proceeding on this theory need not show that an employer acted with discriminatory intent." *Id.* (citing *Throneberry v. McGehee Desha Cnty. Hosp.,* 403 F.3d 972, 979 (8th Cir. 2005)).

"A [second] type of claim recognized by [Eighth Circuit] precedent arises when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA. In this scenario, the employer does not prevent the employee from receiving FMLA benefits. Rather, it is alleged that after the employee exercised his statutory rights, the employer discriminated against him in the terms and conditions of employment. An employee making this type of claim must prove that the employer was motivated by the employee's exercise of rights under the FMLA." *Id.* (citing *Sisk v. Picture People, Inc.,* 669 F.3d 896, 900 (8th Cir. 2012); *Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1051 (8th Cir.2006)).[2]

"A [third] type of claim, arising under § 2615(a)(2), is analogous to retaliation claims that are familiar under Title VII and other federal antidiscrimination statutes. If an employee opposes any practice made unlawful under the FMLA—for example, if an employee complains about an employer's refusal to comply with the statutory mandate to permit FMLA leave—then the employer may not for that reason take adverse action against the employee who is engaged in the opposition." *Id.* (citations omitted).

In this case, Plaintiff appears to be claiming discrimination, by alleging his employment was terminated on February 5, 2018, because he took FMLA leave beginning in October 2017.[3] On the facts alleged, however, it only appears he was

---

[2] "The textual basis for such a [discrimination] claim is not well developed in [Eighth Circuit] cases, but the claim likely arises under the rule of § 2615(a)(1) that an employer may not 'interfere with, restrain, or deny the exercise of or the attempt to exercise' rights defined by the FMLA." *Pulczinski*, 691 F.3d at 1005.

[3] This action was commenced on March 31, 2020. An action may be brought no later than two years after date of last event constituting the alleged FMLA

terminated because Defendant failed to follow its policy of dropping 3 points after 1,000 hours of work. Plaintiff alleges that Defendant initially charged him with unexcused absences because his doctor was only approving one day per month as medical leave, but there is no allegation that Defendant failed to change its records after the doctor submitted another document in November 2017 approving all days Plaintiff had previously taken off work. Thus, as currently alleged, no plausible claim for relief is stated.

## B. Disability Discrimination

The ADA prohibits discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A "qualified individual" must be able to perform the essential functions of the employment position, with or without reasonable accommodation. 42 U.S.C. § 12111(8). "Disability" under the ADA means that the individual (a) has a physical or mental impairment that substantially limits one or more major life activities; (b) has a record of such an impairment; or (c) is regarded as having such an impairment. *See* 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g)(2). "An individual may establish coverage under any one or more of these three prongs of the definition of disability...." 29 C.F.R. § 1630.2(g)(2).

"The disability discrimination provision in the NFEPA are patterned after the ADA, and the statutory definitions of 'disability' and 'qualified individual with a disability' contained in the NFEPA are virtually identical to the definitions of the ADA." *Ryan*, 679 F.3d at 777 n. 3 (quoting *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d

---

violation, unless violation is willful, in which case limitations period is extended to three years. *See* 29 U.S.C. § 2617(c). To establish a "willful" violation of the FMLA, a plaintiff must show that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. *Hanger v. Lake Cty*, 390 F.3d 579, 584 (8th Cir. 2004). Plaintiff does not allege a willful violation or state any facts which would support such an allegation. Plaintiff does allege, however, that he was suspended pending an investigation, and implies he did not learn until May 10, 2018, that he would not be permitted to return to work. Equitable tolling may therefore apply to make Plaintiff's March 31, 2020 filing timely.

720, 723 (8th Cir. 2002); *Morriss v. BNSF Ry. Co*., 817 F.3d 1104, 1106 n. 2 (8th Cir. 2016); *see* Neb. Rev. Stat. §§ 48-1102(9) & (10).

In this case, Plaintiff states in the charge of discrimination he filed with the NEOC and EEOC that he has "a disability and a record of disability." The court construes this statement to mean that Plaintiff is claiming disability under the first two prongs of "disability" as described above (i.e., that he has an "actual" disability or a record of disability).

As used in the "disability" definition, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C.A. § 12102(2)(B).

"An impairment is a disability … if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(2). "The term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(1).

"An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1).

In the absence of direct evidence of discrimination, a court analyzes an ADA claim under the *McDonnell Douglas* burden-shifting framework. *Power v. Univ. of N. Dakota Sch. of Law*, 954 F.3d 1047, 1052 (8th Cir. 2020); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the

plaintiff must first establish a prima facie case of discrimination by demonstrating "(1) that the plaintiff was disabled within the meaning of the ADA; (2) that the plaintiff was qualified to perform the essential functions of the job [with or without a reasonable accommodation]; and (3) a causal connection between an adverse employment action and the disability." *Lipp v. Cargill Meat Sols. Corp*., 911 F.3d 537, 544 (8th Cir. 2018) (quoting *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 755 (8th Cir. 2016).

However "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case," *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 511 (2002), *overruled in part on other grounds by Twombly,* 550 U.S. 544. Even so, the elements of a successful ADA claim are still "part of the background against which a plausibility determination should be made." *Cook v. George's, Inc.*, 952 F.3d 935, 939 (8th Cir. 2020) (quoting *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (quotation omitted). "The court's task, then, is not to determine whether the Complaint pleads the elements of a prima facie case of discrimination under the *McDonnell Douglas* framework, but to determine whether the Complaint alleges facts showing plausibly that [Defendant] has discriminated against Plaintiff based on [his] … disability." *Smith v. PayPal, Inc.*, No. 8:12CV226, 2013 WL 2444032, at *11 (D. Neb. June 4, 2013). "A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555.

Plaintiff's Complaint contains no facts describing the nature of his disability or his alleged record of disability. Without this basic information, no plausible claim for relief is stated. *See, e.g., Carlentine v. Duggan*, No. 8:19CV251, 2020 WL 1820129, at *3 & n. 2 (D. Neb. Apr. 10, 2020) (citing *Cook* and finding on initial review that ADA plaintiff failed to state a claim upon which relief may be granted because he failed to allege any facts describing "the nature of his disability [and] whether his disability limited his major life activities and, if so, how ….").

Plaintiff also has not sufficiently alleged facts showing that he is a "qualified individual." To be a "qualified individual" within the meaning of the ADA, an employee must (1) possess the requisite skill, education, experience, and training for

his position, and (2) be able to perform the essential job functions, with or without reasonable accommodation. *Id.* (citing *Denson v. Steak 'n Shake, Inc.*, 910 F.3d 368, 370 (8th Cir. 2018)). Plaintiff merely states in the NEOC/EEOC charge that his "performance was excellent." Plaintiff does not allege how long he held the Rice Cook position, but even if it might reasonably be inferred that he has the requisite skill, education, experience, there are no facts to show that he could perform the job's essential functions. To the contrary, the facts indicate Plaintiff was unable to attend work regularly. Regular and reliable attendance at work has been recognized as an essential function of most jobs. *Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 445 (8th Cir. 1998); *Buckles v. First Data Res., Inc.*, 176 F.3d 1098, 1101 (8th Cir. 1999); *Brannon v. Luco Mop Co.*, 521 F.3d 843, 849 (8th Cir. 2008); *see Higgins v. Union Pac. R.R. Co.*, 303 F. Supp. 3d 945, 958 (D. Neb. 2018).

Under the ADA, one form of discrimination is "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is ... an employee…." *Cannice v. Norwest Bank Iowa N.A.*, 189 F.3d 723, 726 (8th Cir. 1999); 42 U.S.C. § 12112(b)(5)(A). To state a failure-to-accommodate claim, a plaintiff first "must establish both a prima facie case of discrimination based on disability and a failure to accommodate it." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 905 (8th Cir. 2015). "The plaintiff then has the burden to show 'that the requested accommodation is reasonable on its face, i.e., ordinarily or in the run of cases.'" *Orr v. City of Rogers*, 232 F. Supp. 3d 1052, 1061 (W.D. Ark. 2017) (quoting *Peebles v. Potter*, 354 F.3d 761, 768 (8th Cir. 2004) (internal quotation marks omitted)); *see Ramos v. Valmont Indus., Inc.*, No. 8:18CV313, 2018 WL 5840764, at *2 (D. Neb. Nov. 8, 2018).

Plaintiff alleges that he requested an accommodation which was granted, but then denied. Although not entirely clear, it appears from the NEOC/EEOC charge that Plaintiff was told he could take off work for up to two days per week with medical proof. Defendant's alleged willingness to accommodate Plaintiff in the manner alleged is sufficient at this point to show the reasonableness of the accommodation. *But cf. Higgins*, 931 F.3d at 670-71 ("The fact that Union Pacific previously accommodated Higgins's back pain by allowing him to miss a large percentage of his shifts also does not create a material question of fact regarding

9

whether job attendance is an essential function."). However, as explained above, Plaintiff has not pleaded sufficient facts to establish that he is a "qualified individual with a disability."

Plaintiff also alleges he was retaliated against for requesting a reasonable accommodation. For a retaliation claim under the ADA and NFEPA, there must be either direct evidence of retaliation, or circumstantial evidence that results in an inference of retaliation when examined under the *McDonnell Douglas* burden-shifting framework. *Canning v. Creighton Univ.*, No. 4:18-CV-3023, 2019 WL 4671180, at *10 (D. Neb. Sept. 25, 2019) (citing *Hustvet v. Allina Health System*, 910 F.3d 399, 412 (8th Cir. 2018)). Under the burden-shifting framework, the plaintiff's evidence must demonstrate a prima facie case by showing three elements: (1) the plaintiff engaged in protected activity; (2) the occurrence of an adverse employment action; and (3) a causal connection between the adverse action and the protected activity. *Id.*

"Requesting an accommodation is a protected activity, and termination is certainly an adverse employment action." *Heisler v. Metro. Council*, 339 F.3d 622, 632 (8th Cir. 2003) (citation omitted). Under the ADA, the causal connection must be but-for causation—in other words, the protected activity must be the determining factor for the adverse employment action. *Univ. Of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 346-47 (2013); *Hustvet, supra*. It is unclear whether a causal connection under the NFEPA requires but-for causation, or only requires the protected activity to be a motivating factor for the adverse employment action. *See Ludlow v. BNSF Ry. Co.*, 788 F.3d 794, 802 (8th Cir. 2015).

"The mere coincidence of timing, however, is rarely sufficient to establish the causation element." *Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917, 925 (8th Cir. 2014) (citation omitted). "Although [the Eighth Circuit has] not drawn a definitive line, [it has] determined that a one-month or two-month lag is too long absent other evidence." *Id.* Here, Plaintiff alleges he requested the accommodation in October 2017, but was not discharged until February 5, 2018 (at the earliest), which, by itself, is not sufficient to establish a causal connection between the two events.

10

The ADA and Title VII both require a plaintiff to exhaust his administrative remedies by first seeking relief through the EEOC. 42 U.S.C. § 2000e-5(f)(1) (Title VII); 42 U.S.C. § 12117(a) (stating that the remedies and procedures set forth in Title VII, including those pertaining to exhaustion, apply to disability discrimination claims under the ADA); *see Apenyuiagba v. Omaha Nursing Home & Rehab*, No. 8:19CV30, 2020 WL 128047, at \*2 (D. Neb. Jan. 10, 2020). The EEOC will investigate the charge and determine whether to file suit on behalf of the charging party; if the EEOC determines there is no reasonable cause, the agency will issue the charging party a right-to-sue notice. 42 U.S.C.A. § 2000e-5(f)(1); *see also Hanenburg v. Principal Mut. Life Ins. Co.*, 118 F.3d 570, 573 (8th Cir. 1997). The charging party has 90 days from the receipt of the right-to-sue notice to file a civil complaint based on the charge of discrimination. 42 U.S.C.A. § 2000e-5(f)(1). The NFEPA also requires exhaustion of administrative remedies and contains a 90-day limitations period for filing suit, *see* Neb. Rev. Stat. § 48-1120.01, which is not tolled pending issuance of the EEOC's right-to-sue notice. *See Hohn v. BNSF Ry. Co.*, 707 F.3d 995, 1000-01 (8th Cir. 2013); *Reckley v. Gallup*, No. 8:17CV16, 2017 WL 1968271, at \*2 (D. Neb. May 11, 2017).

Here, Plaintiff has not filed a copy of a right-to-sue notice, nor has he set forth the date on which he may have received a right-to-sue notice from the EEOC or the NEOC with respect to his charge of discrimination. Thus, the court cannot determine whether Plaintiff's claim is timely. *See Apenyuiagba*, 2020 WL 128047, at \*2 (on initial review, requiring plaintiff to file a copy of her right-to-sue notice or, in the alternative, to amend her complaint to allege that she exhausted her administrative remedies and to state the date on which she received a right-to-sue notice).

## C. Racial Discrimination

Finally, Plaintiff alleges he was terminated because he is black. Title VII and the NFEPA prohibit employers from discriminating against employees because of their race, color, or national origin. 42 U.S.C. § 2000e-2(a)(1); Neb. Rev. Stat. § 48-1104. Discrimination claims arising under the NFEPA are analyzed in the same

manner as discrimination claims arising under Title VII. *See Edwards v. Hiland Roberts Dairy, Co*., 860 F.3d 1121, 1124 n. 3 (8th Cir. 2017).

Absent direct evidence of discrimination, Plaintiff must satisfy the *McDonnell Douglas* burden-shifting framework and establish a prima facie case by showing: "(1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently." *Oluyole v. Yahoo!, Inc.*, No. 8:15CV27, 2017 WL 3394588, at *5 (D. Neb. Aug. 7, 2017) (quoting *Gibson v. Am. Greeting Corp.*, 670 F.3d 844, 853-54 (8th Cir. 2012)).

Plaintiff's Complaint contains sufficient facts to establish a prima facie case of discrimination because Plaintiff alleges: (1) he is black, (2) his performance was excellent, (3) his employment was terminated, and (4) a white, disabled employee was allowed to return to work even though she had accumulated 25 points. However, as discussed above, Plaintiff has failed to show that he exhausted his administrative remedies or filed suit within the time prescribed by Title VII and the NFEPA.

## IV. CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief may be granted. However, the court will allow an Amended Complaint to be filed within 30 days, in which event the court will conduct another initial review. If an Amended Complaint is not filed within 30 days, this action will be dismissed.

IT IS THEREFORE ORDERED:

1. On the court's own motion, the court will give Plaintiff 30 days in which to file an Amended Complaint that states a claim upon which relief may be granted. Failure to file an Amended Complaint within 30 days will result in the court dismissing this case without further notice to Plaintiff.

12

2. If Plaintiff intends to pursue a claim under the ADA or Title VII, he must allege whether he received a right-to-sue notice from the EEOC, and, if so, the date on which he received such notice. If available, a copy of the right-to-sue notice should be attached to the Amended Complaint.

3. If Plaintiff intends to pursue a claim under the NFEPA, he must allege whether he received a right-to-sue notice from the NEOC, and, if so, the date on which he received such notice. If available, a copy of the right-to-sue notice should be attached to the Amended Complaint.

4. The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) after Plaintiff addresses the matters set forth in this Memorandum and Order.

5. The clerk of the court is directed to set a pro se case management deadline in this case using the following text: June 25, 2020: Check for Plaintiff's Amended Complaint.

Dated this 26th day of May, 2020.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge